Daniel FARRELL; Lloyd White; and the Oakland Black Firefighters' Association, on Behalf of themselves and all others similarly situated, Plaintiffs,

v.

INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, AFL–CIO, LOCAL 55; City of Oakland, Defendants.

No. C–91–4195 SAW.

United States District Court, N.D. California.

Jan. 13, 1992.

Howard Moore, Jr., Fania E. Davis, Oakland, Cal., for plaintiffs.

Ronald Yank, John Tennant, Carroll, Burdick & McDonough, San Francisco, Cal., Marilyn Kaplan, Oakland City Attorney's Office, Oakland, Cal., for defendants.

## FINDINGS AND CONCLUSIONS RE: DENIAL OF MOTION FOR PRELIMINARY INJUNCTION

WEIGEL, District Judge.

Plaintiffs move for a preliminary injunction enjoining defendant union from using union dues or special assessments of union members to finance litigation that plaintiffs find ideologically offensive. Plaintiffs are the Oakland Black Firefighters' Association and two individual members of that association. Defendants are the local chapter of a firefighters' union and the City of Oakland.

### I. Facts

In November 1985 black firefighters sued the City of Oakland in this Court in *Nero v. City of Oakland*, No. C-85-8448. The suit was a part of a protracted effort to obtain equal employment opportunity within the Oakland Fire Department. The union that represents the Oakland firefighters, Local 55 of the International Association of Firefighters ("Local 55"), intervened in the case on behalf of white males who were not union members but had been offered positions under the hiring procedures challenged in *Nero*. In May 1986 the Court approved a consent decree proposed by the parties that set forth affirmative action hiring goals. Three years later Local 55 sued the City and the Black Firefighters' Association in *Petersen v. City of Oakland*, seeking to have the *Nero* consent decree vacated. The City and the Association moved to dismiss *Petersen* on *res judicata* grounds and the Honorable Judge William H. Orrick of this Court dismissed the case in October 1991. Local 55 appealed the dismissal on October 18, 1991, and that appeal is now pending before the Ninth Circuit.

Local 55's financing for the *Petersen* litigation came from a "Protection Fund" made up of regular union dues. In early October 1991, Local 55 members approved a monthly "special assessment" of $25.00 to continue financing the litigation without the use of regular union dues. The case was dismissed before any funds were collected under the special assessment.

Individual plaintiffs here have all been Oakland firefighters for a number of years. They have all been dues-paying members of Local 55 since 1987, *i.e.*, throughout the entire period of the *Petersen* litigation. Plaintiffs claim that their union membership, and thus their financing of the *Petersen* litigation through union dues, is compelled under the terms of a 1988 Memorandum of Understanding between the City of Oakland and Local 55 that requires Oakland firefighters to join Local 55 as a condition of employment. Plaintiffs thus claim their First Amendment rights are being violated since they are forced to help finance a cause to which they are ideologically opposed—namely, Local 55's challenge to the *Nero* consent decree, whose terms plaintiffs themselves fought to achieve.

### II. Discussion

█ There is no doubt that if plaintiffs have been compelled to finance the *Petersen* litigation against their wishes, a significant infringement of their First Amendment rights has occurred. *See, e.g., Abood v. Detroit Board of Education*, 431 U.S. 209, 234–236, 97 S.Ct. 1782, 1799–1800, 52 L.Ed.2d 261 (1977). The prospect of such infringements would warrant some form of injunctive relief. *Id.* at 238, 97 S.Ct. at 1801. But plaintiffs were never, and are not now, compelled to join or remain in Local 55. They are therefore not compelled to finance the *Petersen* litigation. The 1988 Memorandum of Understanding clearly provides that Oakland firefighters must *either* join Local 55 and pay union dues *or* they may opt out of union membership under an "agency fee" provision. This provision requires them to pay an amount equal to the regular union initiation fee and a monthly service fee equal to the regular monthly union dues. Such agency fee provisions are common and acceptable methods of allowing employees to choose not to participate in union activities while avoiding the problem of "free riders" who benefit from union efforts without paying for them. *See, e.g., Ellis v. Railway Clerks*, 466 U.S. 435, 446, 104 S.Ct. 1883, 1891, 80 L.Ed.2d 428 (1984); *Abood*, 431 U.S. at 222, 97 S.Ct. at 1792. Employ-

ees who select the agency fee provision may insist on paying the union only those fees that represent expenses "germane to collective bargaining." *Ellis*, 466 U.S. at 447, 104 S.Ct. at 1892 (citation omitted). They may also demand from the union an accounting that delineates between those expenditures that are for collective bargaining activities and those that are not. *Chicago Teachers' Union v. Hudson*, 475 U.S. 292, 106 S.Ct. 1066, 89 L.Ed.2d 232 (1986). The union must then provide (1) an adequate explanation of the basis for the fee, (2) a reasonably prompt opportunity for the employees to challenge the amount of the fee before an impartial decision maker, and (3) an escrow for the amounts reasonably in dispute while the challenges are pending. *Id.* at 310, 106 S.Ct. at 1078. In other words, plaintiffs can take the simple step of choosing the agency fee provision over union membership, and challenging the fees if necessary, in order to avoid financing the union activity with which they disagree. To this date, neither plaintiffs nor any other Local 55 employees have attempted to exercise the agency fee option.

■ Plaintiffs insist they were compelled to join Local 55 without being informed of the agency fee option or being given the opportunity to avail themselves of it. To support these claims plaintiffs offer primarily their personal "understanding" or "belief" that union membership was a condition of employment, and state that they have "never known" any firefighters who chose the agency provision over union membership. They also state that had they been aware of the provision they most certainly would have exercised it. Finally, plaintiffs allege the union's insensitivity to their expressed opposition to the *Petersen* litigation, and past union harassment of an Oakland firefighter who temporarily left the union, as further proof that union membership was mandatory. These allegations are far from sufficient to prove plaintiffs were compelled to join Local 55. All three

individual plaintiffs were Oakland firefighters before the 1988 Memorandum of Understanding came into existence. All three joined Local 55 pursuant to that Memorandum. That Memorandum clearly sets out the option to refuse union membership and pay the agency fee instead. The president of plaintiff Association participated in the negotiations underlying that Memorandum and was one of its signatories. It is therefore difficult to see how plaintiffs were unaware of the agency fee option provided for in that Memorandum. In any case, any uncertainty plaintiffs may have had regarding this option has certainly been erased by the present litigation. Local 55 has stipulated in open court that any plaintiff may at any time exercise the agency fee option simply by notifying Local 55 of the election to do so.

Plaintiffs assert that the choice between union membership and agency fee is a choice between financing an ideologically offensive cause and losing certain benefits of union membership such as voting privileges. Essentially plaintiffs assert a First Amendment right to participate in the union without financing causes with which they disagree. Plaintiffs do not have that right. *See Kidwell v. Transportation Communications Int'l Union*, 946 F.2d 283, 287 (4th Cir.1991). Indeed, the *union's* First Amendment right to associate appears to outweigh any rights plaintiffs have to membership. *Id.* at 300–301. If plaintiffs wish to participate in every aspect of union decision-making, they must join the union and accept the will of the majority.

The issue of plaintiffs' financing of the *Petersen* litigation through union dues is, in any case, effectively moot since the case has been dismissed. The appeal, and all future litigation, will be financed through "special assessments" of union members, and those employees who choose the agency fee provision will not be subject to these assessments.[1] There is neither an ongoing

---

**1.** The language by which the union membership approved the special assessments in October 1991 authorized those assessments only to finance the litigation of the *Petersen* case before

Judge Orrick; it did not authorize the union to collect the assessments for purposes of appeal before the Ninth Circuit. Local 55 has declared that it will not collect a special assessment for

nor an imminent danger of infringement of plaintiffs' First Amendment rights. Plaintiffs can easily avoid any such infringement by electing the agency fee option. Injunctive relief in these circumstances would be unwarranted. *See Los Angeles v. Lyons,* 461 U.S. 95, 111, 103 S.Ct. 1660, 1670, 75 L.Ed.2d 675 (1983).

The foregoing constitutes the Court's findings of fact and conclusions of law.

Accordingly,

IT IS HEREBY ORDERED that plaintiffs' motion for a preliminary injunction is DENIED.

the appeal until the union membership approves appropriate language authorizing an assessment for that purpose. Employees who select the agency fee provision will not be subject to these assessments.